*Birchard, J.
This bill seeks to settle the rights of over 150 persons interested in several lines of stages and mail contracts. The papers are very voluminous, and were they fully sot forth, and the facts elaborated, some 600 pages of a volume of the Ohio Reports would scarcely be sufficient to contain them.
It shall be my purpose to condense the matter as much as may be consistently done, keeping in view the facts necessary to an understanding of the principles of law arising in the controversy, and which we deem important to a just determination of the several rights of the parties, in order that, on a further reference of the matter, the facts may be collected and properly applied. In the year 1835, the complainants and defendants embarked in the enterprise of establishing a daily line of four-horse post-coaches from Cincinnati via Urbana to Sandusky City, to be called the Urbana and Sandusky line of stages, the capital stock to bo $12,000, subject to be increased to $20,000, to be divided into-shares of twenty dollars each. Books were to be opened and stock subscribed, and the company was intended to be a joint stock company. After a considerable amount of stock was subscribed, bona fide, several of the parties took what was necessary to complete the amount of $12,000, in order to set the line in operation, with a mental or conditional reservation, as may be supposed, that if the amount should be made up by subscribers on subscriptions then out, that they should not be holden on the stock they thus considered conditional. A meeting was then called, and certain articles adopted for the government of the members. Among these, provision was made for the annual election of three directors, on the first Monday of November, who were to have power to make all contracts and arrangements necessary to effect the objects of the company, to appoint officers and agents, and to make such rules and regulations as they should see fit. The stock of the company was to be transferable by assignment, by permission of the directors at one of their regular *263 meetings, and dividends to be declared when the funds of the company should justify.
*On the first Monday in September an election of officers took place, and the officers were re-elected on December 7, 1835, to serve till the day of the annual election.
Without making further progress in the formation of a joint, stock company, the line was put in operation ; a mail contract had been secured by the directors on a part of the route. But alii that part of the daily line north of Springfield was discontinued in October, 1836, and the stock was transferred to the line from Columbus to Cincinnati, which last line had been purchased by the director’s, and at an irregular meeting held at Urbana, at which only a portion of the stockholders were joresent, trans ferrod to and subsequently conducted in the name of the company. The company became embarrassed and much involved in debt. Sundry suits have been prosecuted, and debts to an-amount greater than the means possessed by the officers are still unpaid.
The complainants seek a settlement of the affairs of the association, and claim contribution.
Without wasting time by a more minute detail, we come to the first important inquiry. How far are the stockholders liable for debts contracted by the directors? It may be admitted that, as-to many persons parties to this suit, the acts of the directors in-departing from the original objects of the association, and engaging in hazardous undertakings foreign to and adverse to it, was such a violation of their rights as gives them, in a court of equity, no just claim to contribution ; and yet, as to creditors, the case may be quite different. Had such stockholders seen proper to step forward and assert their own rights at the time, and given notice to the public, they could not have been made responsible for any debts subsequently contracted. They neglected, however, to take any measures to inform the public, and left the directors iff the sole management of their property, in the exercise of their name as a fism, and of the credit of the firm. We hold, therefore:
1. That as to all creditors who have dealt with the directors and agents of the association in good faith, without a knowledge of their departure from the original objects of *the associa *264 tion, that all the stockholders are liable upon the principles of copartnership liability.
2. That for all liabilities of the company for all the debts contracted, bona fide, by the directors and agents, in the prosecution of tho original objects for which the company was formed, tho stockholders are liable to contribution to each other upon the ordinary principles applicable to copartners.
3. That the contract to carry the mail on a part of the route was to bo considered as within the original objects of the company. It was doubtless contemplated by all the partners that these contracts, if obtained, would aid them in maintaining their line of stages- — would tend to diminish the aggregate expense, and enhance their profits by avoiding opposition, and by adding to their funds tho amount to be paid by government for the transportation of the United States mail.
4. That those who have dealt, knowingly, with the directors and agents of the comj)any, in matters not coming within the scope and objects of the associates, have no claim to call upon any of the stockholders, savo those who were cognizant of the manner in which the agents and directors were conducting, and by their silence or direct action assented to and ratified their acts. It is a wholesome rule that should bo applied in a case like this — that whore a member of a copartnership, whose agents are daily exceeding their authority, stands by and makes no objection at tho proper time, he will be considered as agreeing to the acts of the agent, and will not be listened to in equity when it becomes his interest to assert the contrary. This rule would seem to be strictly applicable to all the stockholders who were present at the time of the transfer of the contract and property purchased of Chittenden, especially if, upon full examination, it shall be found that the question of accepting the transfer of the contract and property was submitted to a vote of the stockholders, to be determined by the majority then present, and a majority did vote to receive the contract and property, and to take it off from tho hands of the directors. These acts should be held sufficient to charge all those who thus assented. They should be deemed and considered as agreeing to bo bound by *the majority vote; and in taking the account the master will be directed to hold them all equally responsible, as partners, for anydosses which have arisen from that part of the operations of the company.
*265 5. The several shares of stock that were conditionally subscribed were necessary to enable those to proceed who acted in starting the line of stage coaches. They were taken for that purpose. It would operate as a /raud upon all those subscribers to the stock who were ignorant of the fact that a condition was annexed to such subscriptions, if those conditional subscribers were to be allowed to avail themselves of the secret conditions and avoid their subscriptions. The holders of these conditional shares are, in taking the account, to be regarded as stockholders to the amount of such shares, and the rules herein established are to be applied to them.
6. Several questions arise upon the subject of transfers of stock. By the original articles it was agreed that stock might be transferred by assignment, and by permission of the directors, at .any regular meeting of the directors. The associates have proceeded with little regard to the informal rules adopted by the association, from the beginning, and almost every stage of their progress, has been marked by singular irregularties. They did, nevertheless, continue to have a board of directors or managers, who, if not elected agreeably to the articles adopted for the government ■of the company, did, defacto, by tacit or express assent, act as such, and permit, at sundry of their meetings, transfers of stock. We .are of opinion that all such transfers are valid. The effect of these -transfers is this: Upon the principles already stated, the assignor is to be held liable for his pro rata share of the debts existing- at the time of the transfer, and for contributions to that time and no more. And from that time the assignee of the stock is to be regarded as liable in like manner for the debts subsequently contracted.
The case is referred to a master to take testimony and to state an account upon the principles specified in the following decree, -reserving all further question till the coming in of the report.
--''-The following decree was entered:
This cause came on to be heard on the bill of complaint, answers, exhibits, replication, testimony, and the report of A. R. Caldwell, special master commissioner, and was argued by counsel; on consideration whereof, the court do order, that the report •of the said master be overruled and set aside, and that the cause .stand referred to Hocking H. Hunter, as special master commissioner, who shall proceed:
*266 I. To take an account of the liabilities of the company, and to this end he shall take proof of the just amount of each claim ; and shall, by notice published in tho Ohio Statesman and Ohio State Journal, require the creditors of the company to present their claims to him, together with tho necessary proof in support thereof, by the 1st day of April next.
II. He shall adjust and apportion the liabilities between the members, and shall specify what members of the association are liable to each claim. In this branch of the account the master-shall conform to the following principles:
1. Debts contracted in the course of business, originally contemplated by tho company at its formation, are chargeable upon all the members.
2. Debts contracted in execution of those contracts for the trans* portation of the mail, which were entered into before the time-when a part of the line was abandoned, are chargeable on all the members; the facts in relation to such supposed abandonment, and the time when it shall have occurred, to be ascertained by evidence, and be reported by the master.
3. Conditional subscriptions for stock are to be regarded as absolute.
4. Transfers of stock, in good faith, with the consent of the directors, and duly entered, are to be holden valid; members thus-assigning are liable for debts then existing. Persons accepting such assignment are liable for subsequent debts.
5. When debts have been contracted for objects, or in a course of business beyond what was originally contemplated, they arc-chargeable on those members of the company whose assent, expressed or implied, is shown by proof, including all *debts-for and on the line from Columbus to Springfield. Tbe master will apply to such cases the general law of partnership. When members are holden chargeable on such liabilities by the master, he-shall report the evidence which binds each individual and his own opinion thereon.
III. In adjusting the accounts between the members of the association, the master shall:
1. Hold each member liable in proportion to his stock.
2. In the event of insolvency he shall apportion the loss among the solvent members.
3. If he shall find that any member of the association shall have- *267 subjected the association to liabilities or losses by culpable negligence, miseondnet, or transcending powers or trusts, he shall charge such losses or liabilities upon them, and upon such others as have assented thereto, or co-operatcd therein.
IV. The master shall report a plan of adjustment by which the debts which he shall find due are properly apportioned to those upon whom the burden ought to fall, with due regard to the preservation of all just rights and interest; and shall also report all the essential facts arising out of the allegations and proof in the-case, with his opinion, and all accounts necessary to a final decree in the cause; and he shall have power to examine the parties and. witnesses touching any matter arising in the case, or may causo the same to be done before any person authorized by law in tin1 state or elsewhere, at the instance of any party or his attorney, who shall submit to the master interrogatories, to be propounded to the party or witness proposed to be examined, and who shall, at the same time, place in the hands of the master funds sufficient to defray the expenses incident to the taking of such examination,, in all eases when such examination is not had personally before the master.
V. The master shall hold his first session at Such place in the-town of Urbana, in Champaign county, and at such time as may be designated by the master, alter twenty days’ notice thereof, published in the Ohio Statesman and Ohio State Journal, published as aforesaid, and may hold such further adjourned *sessions, at such times and places as he may appoint at said first session, or at any adjourned session; and shall have power to prescribe such rules and limitations in regard to the time within which all parties shall be required to close their arguments and evidence as he may deem just and reasonable.
VI. The master shall, on or before the 1st day of June next, file-his report with the clerk of the Supreme Court of Champaign county, together with the papers in the cause; and said clerk is-strictly enjoined to keep said report, and the papers in the cause, in his office, alter the sarnie shall be so filed, subject to the inspection of' all parties interested; and all exceptions to said report, shall be filed with said clerk at least five days before the next term of the Supreme Court in Champaign county.
It is further ordered, by the court, that Samuel V. Baldwin, Esq., be appointed receiver in this cause, with power to take into *268 his custody and possession all money, property, and effects of said .association, in whose hands soever the same may be, and the same to convert into money to the best advantage, and to collect and receive all debts due to said company, by legal process or otherwise ; and said receiver shall render an account to this court, at its next term in Champaign county, and shall pay over and account as the court shall order; but before entering upon the discharge of his duties in this behalf, said receiver shall give bond, with security, to the acceptance of the clerk of said court, to the State of Ohio, for the use of all persons interested, in the penal sum of $5,000, conditioned for the faithful execution of his trust in this behalf, which bond shall be deposited with, and be carefully preserved by said clerk. It is also ordered that said receiver, out of .any funds in his hands, pay to H. H. Hunter, on request, the sum of fifty dollars as an advance on account of said Hunter’s fee as -commissioner, and his expenses.
It is further ordered that this cause be continued to the next term of the Supreme Court, in Champaign county, and that the clerk of this court certify a copy of this decree to the clerk of the Supreme Court of Champaign county, to be by *him entered on the journal of said court as a decree of the last term.